Next case on our docket is Scott v. City of Mandeville Mr. Whitmore Good morning May it please the court, I'm David Whitmore here on behalf of the appellant, Amber Scott I'm not here today to defend any poor decisions that Ms. Scott may have made the evening of this incident If she were here today, she'd probably agree she made some bad decisions If your car's not operating properly and you're driving with your children in it, that's a poor decision You or I, we may choose not to take any sort of medication, prescription or over-the-counter in an operating vehicle But we're not here today to judge Ms. Scott's decision We're here today to determine whether there was probable cause to arrest her for DWI And whether in effecting that arrest, the arresting officers used excessive force Ms. Scott asserts that in granting some rejection, the district court impermissibly weighed the evidence And made credibility determinations to reach its conclusion that the officers had probable cause to arrest her for DWI As the district court noted in its decisions, Ms. Scott presented evidence that the arresting officers made inconsistent statements about their observations during their investigation However, the court did not address these inconsistencies Instead, it stated that even if there were inconsistencies, there were other facts and circumstances that led to probable cause to arrest her for driving while intoxicated So what were these other facts and circumstances? First, Judge Malazzo relied upon some statements made by a witness that Ms. Scott was driving erratically Erratic driving may have given the officers cause to pull her over and further investigate It may have been the basis for issuing a citation for careless operation But standing alone, it does not give probable cause for an arrest for DWI And it's our position that at the end of the day, as I'm going to analyze in just a second That fact was standing alone at the end of the day, that she drove erratically Didn't an officer report that he saw her hit a curb? Yes. Yes, I'm not disputing any of that. That did occur and she did say I had some So we don't just have that fact standing alone then, do we? That is a fact that That you had the report of the erratic driving Correct Then you had an officer who said he saw her hit a curb So we don't have the one fact standing alone, do we? Well, those are two facts, but they're all about the same thing They're all related to her erratic driving So let's put it that way Another factor that the court noted in support of her other facts and circumstances Was that Ms. Scott refused a urinalysis While the urine test may have shown she took her prescription medications Nobody's going to give her a urine test out on the street And that's where she was arrested The refusal to take a urine test came after the fact After the arrest That cannot form a basis for probable cause at the scene when she was arrested Another factor that swayed Judge Malazzo Is that Ms. Scott admitted taking prescription medications That, again, was something she admitted at the station After the fact, after she was arrested That cannot form a basis for probable cause So what are we left with, other than the erratic driving? We're left with the observations of the arresting officers during their testing Officer Guillory with Mandeville Police Department And the observations of the erratic driving, such as hitting the curbs Correct I'm not disputing that. You are correct, Your Honor That is one of the observations, that she hit a curb So what are the other observations? It's the testing Officer Guillory said she passed all her stuff But he called in Officer Huff Judge Malazzo asserted that the plaintiff did not dispute the assertions by the defendant's officers That Ms. Scott demonstrated lack of convergence and swaying during testing That's correct I cannot dispute what Officer Huff said he observed There's no video of the test You can't get a camera focused on somebody during the testing anyway To see what's going on with their eyes, the lack of convergence and things like that We don't have that So I have to see what he said And we can attack what he said and create doubt as to what he said And we think Ms. Scott demonstrated that there were serious issues with Officer Huff's credibility As well as with Officer Guillory's credibility The court focused on lack of convergence and swaying And used that to support probable cause But then turned a blind eye to other matters about the inconsistent statements And one of those that she criticized Ms. Scott for raising was this nystagmus The second paragraph of Officer Huff's report at page 325 Contains a lot about what he said he observed about nystagmus This report was completed two days after the arrest And it's belied by statements that Officer Huff made on the videos On the audios, at the screen, at the scene In one of the videos, Dondeville 4, at the 38 second mark Officer Huff discussed his lack of conversion at length with Officer Guillory And Officer Guillory states, as he did many times that night He didn't observe any nystagmus At the scene Officer Huff agreed, it's clear he said no Clearly that's what he said, he said no But there was lack of convergence He didn't say anything else about nystagmus The inconsistencies in credibility of the arresting officers continued at the station There's a booking chair video in the record And at the 354 mark there's an exchange again between Officer Guillory and Officer Huff And Officer Guillory again says, I didn't see any nystagmus And this time they're talking about prior to 45 degrees But Officer Huff says, oh, I saw it, just put it all in there And you know what? Officer Guillory, despite the fact that he didn't observe any nystagmus Officer Huff was not his supervisor And Officer Guillory was the arresting officer He did just that, he put it all in there, meaning in his arrest citation The arrest citation was completed, it's page 419 to 422 in the record On the first page Officer Guillory says he is making the statements therein duly sworn upon his oath On the second page, despite his assertions that he didn't observe any nystagmus He did what Officer Huff told him to do, under his own oath And despite his own observations, he put it all in there He put that she had all sort of nystagmus Did Ms. Scott testify by deposition? No, Your Honor Normally when we talk about a dispute of material fact The plaintiff says the traffic light was green And the defendant says the traffic light was red And so there's a dispute as to whether the light was red or green I understand that's not your facts here But normally just inconsistencies on the part of one party Doesn't necessarily create a dispute of material fact Does my question make sense? We don't have here the plaintiff directly saying no What the officer said at the scene was false or inaccurate No, well first of all, Ms. Scott If we're talking about the testing that they did Ms. Scott can't look into her own eyes She can't tell whether she has nystagmus She can't tell whether she has a lack of convergence What we have to do is take the inconsistencies And it's not just inconsistencies That's the word that I think Judge Malazzo used It's the credibility What I'm saying here is that Officer Guillory Even though he didn't observe any nystagmus He swore out an arrest affidavit saying that he did So what we have here is the old adage Falsus in uno, falsus in omnibus If you're going to have two factors that the court relied upon Lack of convergence and swaying And then there's this third factor that we raised, nystagmus And we show that the things that the officer said Were not credible and that he made a false statement He didn't observe nystagmus Made a false statement under oath in an arrest citation That's something that the jury should be allowed to determine Whether they're telling the truth Because if one falls, they can all fall So that's where we believe the judge made a mistake In weighing the evidence and going to credibility And I'd also invite you to watch the tape There's a tape, a booking room tape The 541 mark Officer Huff suddenly notices that there's a camera in the room And he goes, oh, there's a camera And he looks at Officer Guillory And they say, oh, they didn't see anything And they said, oh, that's right They're not going to see expletive If you're not doing anything wrong Why are you worried that there's a camera in the room Observing you at the time? Those are things the jury should have been allowed to consider The second issue Ms. Scott raises is about excessive force In regard to this claim, the court said The officers were gentle and cordial And didn't use anything that a juror could find Represented excessive force The video shows differently The video shows one of Ms. Scott's arms being pulled behind her back And thrust up toward her shoulders After she advised the officers that she had had shoulder surgery In the process of doing that, they also bent her over The trunk of the car from a standing position It was anything but gentle The court cited Rodriguez v. Farrell for the proposition That minimal force against a fragile arrestee Which results in minimal injury Does not give rise to a claim of excessive force But this court's decision That's an 11th Circuit decision This court's decision in Johnson v. Holland, 710 FedEx 248 Recognized that even when The court emphasized that there was a standard technique used Even when there's a standard technique of handcuffing is used Johnson recognized that there could be a claim of excessive force When the surrounding circumstances Would put a reasonable officer on notice That an arrestee was particularly susceptible To injury from the standard maneuver The Johnson court noted that in Rodriguez The officers had no notice that the plaintiff was vulnerable to an injury In this case, Ms. Scott advised the officers I've had surgery She did it at least two times The video, which you've properly referred to a couple of times Shows that she was moving her arms Maybe even, you might say, waving her arms But at least moving them around naturally There's nothing in that video To indicate that she was in any way Disabled or injured in such a way That her arms could not be used For a handcuff in the way any persons could I'm not saying that she was somehow disabled Or unable to move her arms What I'm saying, Your Honor, is that When they then took her arm Took it behind her back, if you watch the tape And then they thrust the arm up like this That is where the injury occurred And that gets us then into the things That Judge Malazzo didn't do And that is to examine these factors From Graham v. Conner as well as this court's decision In connection with the injury Does the record contain any information About the nature or the extent of the injury That resulted from her arm being thrust upward behind her back? Absolutely, we have a medical record in the evidence That talks about her injuries and says She's injured, she's hurt her shoulder She's going to refer for an MRI And she may need an orthopedic consultation Yes, there's a medical record in the evidence So has she been receiving treatment for that? She did receive treatment for that The Johnson Court... I'm sorry You do see the problem here Let's say this is a 300-pound, very muscular, very fit Male suspect Who says, don't touch my arm, I've just had surgery Don't touch me anywhere What are officers supposed to do under those circumstances? But he says, but I'm not going to come peaceably I understand that that is what... And there's case law out there that says And the appellees cited that say Oh, you know, any time somebody wants something to happen to them They could say this But that then gets, Your Honor, into the factors That the court did not consider And that's the Graham v. Conner factors That there was no analysis of that Of the factors by the district court Whether she poses an immediate threat Whether she's actively resisting arrest Or attempted to evade The severity of the crime None of those factors were considered by the court This court considered them as recently as just in May In Tucker v. Shreveport They went through an analysis of these factors There's no analysis of those factors in this case Well, it's pretty standard procedure to handcuff people So that they cannot reach for a weapon That again gets into the analysis of the factors In the Graham case You have to analyze this under that What kind of threat was she? There was no evidence that she was a threat in any way And we're not saying that A standard handcuff of doing it like that Putting her hand... But to take it and then thrust it upward like that And bend her over the trunk of the car Those are the questions of fact That the jury should be allowed to consider And I see I've run out of time But we also have the state law claims And the judge committed in our estimation Many of the same errors on the state law claims In weighing the evidence and making credibility determinations We think she should have passed on that And allowed Ms. Scott to proceed in another forum With those claims under state law Thank you Good morning Please the court I'm Keith Detweiler I'm here on behalf of the Mandeville defendants Mr. Miller and I split the argument Where I'm going to address the probable cause issue And he's going to address the excessive force If that's okay with the court As to the argument that The officers gathered information After they got off of the scene If the plaintiff's argument about learning about the drugs That Ms. Scott finally admitted to ingesting Or seeing that she was refusing a urinalysis If that means that there's no probable cause For the arrest on the scene for a DWI Then every DWI where an officer Who's trained for the intoxilizer Brings an arrestee in And gives them a breath test at the station Then all of those arrests for DWI Would be negated based on that argument In this situation There was ample probable cause To arrest her for multiple violations I think the officers showed restraint In not doing so Counsel just argued that There may have been cause to arrest her For reckless operation I suggest to you that there was What they did arrest her for Was improper lane usage And you'll see in the video Officer Guillory tells her When she finally realizes Because it took her a little while She finally realizes that she is under arrest And she's going to jail And he tells her on the scene You are being arrested for improper lane usage And he tells her that any traffic violation Is an arrestable offense under Louisiana law But then he tells her You're being arrested for suspicion of DWI And the suspicion is based on The collective 40 plus minutes Of the investigation done on the scene Which included the two complainants The civilians that called in And said that she was all over the road She was causing them to fear for their lives For her lives For her life She was almost crossing the center line And her children were in the car I'm sorry? Her children were in the car Yes sir There were three minor children in the vehicle Which again you'll see on the video That she doesn't seem to Acknowledge or worry about During this entire 40 minute process Where the officers are trying to figure out What is impairing her Lieutenant Ackman is the officer That initially stops her Well and In terms of the video Who seemed to care about what What did the officers do with regard to The three minor children who were in the car During the period of time that they had her On the side of the road Testing her Well the officers Did they do anything regarding the children? Well they were next to the car And you could tell that they made sure That the children were ok Seated in the back seat What's telling is that the children Don't seem upset when they're probably They're finally taken from the car And Ms. Scott even says With expletives involved But I thought you were suggesting That she should have been trying to do something more With the children at the time she was also being Tested by the officers No she just What I'm suggesting is she doesn't seem Upset about the fact that she has her children And I think it's because of the level of Intoxication that she did have Because of the medications she was on Throughout their interaction with her They can tell that her speech is slurred And there's something wrong Lieutenant Ackman is the first person that Interacts with her and pulls her over And it's all on his dash cam You can hear what he says And he says she's definitely impaired And then when she gets out of the car He questions her Because she starts saying that her car is impaired Well her car has problems And it pulls to the right And then she starts talking about her surgery And the surgery was Something that she just brought up So when he asks her about that He starts questioning her about Well if you had such serious surgery so recently You have to be on pain medication Because he's trying to get to the bottom Of why she seems so impaired And she denies it She denies it repeatedly Throughout And so what the officers do collectively Is try to figure out what the impairment is They agree that alcohol is probably Not going to be it But when counsel says that she passed All of her field sobriety tests That's simply not true What officer Guillory said was That because of the dim lighting He couldn't tell whether or not nystagmus Was an issue or not Then he had her perform a series of other tests Which you can clearly see on the video The nine step test She does poorly on the nine step test She has trouble As far as the counting She's counting too fast Those are all things that officers are trained To determine whether or not someone's impaired And so everything she does From their simple Interactions with her Indicate to them That she's impaired in some way And what they finally decide Is to call in The drug recognition expert Officer Huff Who officer Guillory from Mandeville Just happens to know that Officer Huff is on duty with the Causeway Police So he calls him on the phone And you can hear him clearly Tell officer Huff What he's got He tells officer At 1340 of video 4 Which is Guillory's video And Guillory's audio Due to failing field sobriety tests Slurred speech She denies she's on meds Definitely not alcohol If it's anything It is something he can't detect Her pupils look fine But there's bad lighting So he didn't see the pupils drastically One way or another So he asks him If you have time to come Can you come check this woman out Because obviously she's impaired So officer Huff comes out There are times on the video They're on 190 in Mandeville There are cars going by You can hear some things You can't hear others There are multiple discussions between the officers Where they're figuring out They're doing their investigation As to probable cause And whether or not What they have Or what's wrong with her When they finally make the decision To arrest her As I said Officer Guillory tells her It's for improper lane usage And suspicion of DWI He then brings her to the station He sits her for a while She's asking to take the breath test Because she knows she doesn't have alcohol And he tells her You probably don't have alcohol But I can't do it yet Because he's got to wait the 15 minutes So he does everything properly When it's finally time for her to take the breath test She does It comes out zero So then he explains to her I'm going to ask you to take a urine test She asks him all kinds of questions About what it's going to show And he tells her Because now on the scene You can see on the video Where Lieutenant Ackman finds the prescription bottles of medication There's four different bottles That he finds in the car They involve Lexapro, Xanax, and Hydrocodone And there's one other Well now he knows That that's probably what she's on So he tells her If you take this urine test If you're on those medications And then she admits She's taken them at least twice that day He tells her Then your urine test is probably going to show those things And after three or four minutes of discussion She says I'm not taking that So it's based on all of the totality Of the circumstances The suspicion of impairment On the scene And then the investigations as it ensues This is over a several hour period And also based on The drug map recognition expert Officer Huff That she's arrested for DWI And she's arrested for improper lane usage So if you have any questions That's all I have to say Thank you Counselor Thank you Good morning Your Honors Bert Miller here on behalf of Greater New Orleans Expressway Commission Officer Huff And Nick and Jim I'm going to be addressing the Excessive force issue But there's something I would like to touch upon Slightly on the false arrest claim And that's just The one thing that wasn't mentioned earlier Is qualified immunity Which is the applicable standard here I think, and that's applicable to both the false arrest claim And the excessive force claim And essentially It's not that there Can be no reasonable doubt About whether or not she might be able to be convicted At some point of a DWI It's whether or not there was probable cause At the scene based on the facts And totality of the circumstances And that the arrest Wasn't objectively unreasonable There's nothing objectively unreasonable Per the video and the evidence Presented about The probable cause that was present For the arrest And Mr. Detwiler went through a number of factors And those were all there She had lack of convergence at the scene She had hit a curb, the children in the car The officers spent a lot of time, and the court noted That the officers spent a lot of time Trying to get this one right And Plaintiff's has pointed to Inconsistencies during the progression Of the investigation which Do not obfuscate the probable cause That was objectively there for the arrest At the scene You need to spend your time on excessive force I think As to the excessive force claim One thing that has to be The standard for excessive force Which Is applicable to this case And then the allegations are an injury Which is directly and only From the excessive force Which was excessive to the need at the time And it has to be objectively unreasonable We keep going back to the objectively unreasonable We have video of this That shows that Ms. Scott was handcuffed behind her back With her arm raised And kept in place to Effectuate the cuffing by the officers And one thing not mentioned Was that Ms. Scott was not cooperating With the arrest  Per the video She began to resist the officers attempts To put her in the handcuffs And one case that I'd like to point out That was cited It's a Poole vs. Shreveport case Which was cited in the brief 691 Federal 3rd 624 It's a case that talks about excessive force And actions that escalate With the suspect's actions It's measured in ascending action You don't disagree With the assertion that she She told the officers That she had surgery So that this was painful Putting her arm behind her back You don't disagree with that I don't disagree that she did say those words Once the arrest began to be commenced And we've also cited case law Regarding this So would you agree with me That what may look like resisting Is her refusing to put her arm in a position That causes pain Which is probably kind of natural If you're putting my arm in a position That's painful to me I'm going to resist putting my arm in that position Sure I would agree that in general That is potentially a reason for The initial resistance But what has to be viewed regarding this Is whether or not It was objectively unreasonable For the officer to take the action Not subjectively unreasonable Objectively unreasonable In what he knew at the scene And I'm glad you brought that up About the issue of surgery And her statement In the Johnson v. Hollins case The one cited by plaintiff and brought up to this court First off, that was an MSJ That was granted on the excessive force Element for the defendants For the defendant officers Because it was a de minimis injury And it was a normal cuffing And that's what we have here It's an ascending action with a normal cuffing There was nothing objectively unreasonable or excessive About getting her into the handcuffs It's standard procedure There's cases we cited as well Let's say when you use the standard handcuffing procedure In response to what the plaintiff What the suspect is doing What is standard about lifting her arm up And putting her over the hood? I'm sorry, repeat What is standard about lifting her arm up Behind her back and putting her over the hood? So with the resistance Obviously from the video Officer Huff holds her arm Once he gets her arm up He holds it into place So that the other officer can actually Lock in the cuffs To put her in cuffs And that is the standard part of it It's standard for suspects to have their arms Put behind their back In a position such that the officers are able To connect the handcuffs That's the standard part of it And with regard to the Johnson case But she's saying don't touch my arm It will hurt Correct, and that's the point I'm getting to In the In the 11th circuit case that we discussed Which was discussed both by the court and the plaintiff The Rodriguez case This is a very similar case that was very Applicable to the circumstances here You had a gentleman who had an injury to his arm And after commencement And in this case actually had a rehearing So in the initial case of Rodriguez There was no excessive force And they didn't discuss the issue of Evidence suggesting that he told the officer He had an issue with his arm On rehearing they addressed that issue And the rehearing is 294 Federal 3rd 1276 I believe It's also cited in our brief And the statement About a prior injury At the moment of arrest Does not defeat a claim of Qualified immunity We're not viewing this, this all has to be viewed From that auspice And the Rodriguez case There was evidence that after commencement Of the handcuffing the plaintiff Had stated that hold on my arm's Injured and the officer continued To effectuate The arrest One thing that Was also cited in that case Is case law that recognizes that When someone's being arrested That they're not happy about it and they're going to say things Especially after the arrest has commenced And this is also cited in our brief Is that once the arrest has commenced Someone might say don't do that no my arm is not You know whatever they're going to say An officer doesn't have to give credence In the moment of arrest in attempting to Do his job to place The suspect in handcuffs And well I understand that but There was nothing magical about that Moment of arrest I mean they had spent Half an hour With her and so What would have been the problem With having a Little more dialogue about the injury The nature of the injury When it occurred All I'm saying is if she claims An injury and you're telling me the officer doesn't have to Give credence to the claim In that instance Where I mean she's at the back of the car She's doing every test they tell her to do Why don't you take 30 seconds and ask And that's in the moment of arrest It is kind of a special moment is now you've Permitted them to cooperate with what you're doing I understand that but there was no moment When she was out of there And you can hear and see from the video That as soon as like hands were placed On her arms she turns and begins To fight all movements Of the officers and it wasn't just about her arm She was turning and you can hear that From the video from officer Guillory Saying stop turning stop turning stop turning You're pulling away from us and he's trying to Tell her to stop what she's doing and cooperate With the arrest I mean this is Resisting their attempts to put her in handcuffs But if I'm resisting because it hurts Well the turning wasn't Necessarily the turning was not There's nothing to suggest that the turning was because It hurt that came after When she said that and in almost Simultaneously and really with The movement to control her arm And be able to place it into the handcuffs And the thing That the courts have recognized is that Those moments where she screamed Almost simultaneously with them putting her In the handcuffs I had surgery You know the the the an officer Is not required it's not objectively Unreasonable to effectuate the arrest In that circumstance even in the face of Someone saying oh that hurts or stop At that and that's what happened in the Rodriguez case There was evidence to suggest that The person said oh you're hurting me by by doing What uh by moving the arms and in that case In the Rodriguez case there was significant Injury the the in the Rodriguez case The suspect's arm actually was amputated At a later time allegedly from the Injury and I think the other Important thing on that note to point out is Something you mentioned earlier is that The standard for Excessive force that we're dealing With is injury Directly and only from the excessive Force and it cannot be just diminished Well when there's an exacerbation Of pre-existing injury It's it's treated in the Case law that we cited as somewhat Of a diminished it's not directly and only From the excessive force used she's already Got this injury and Do you know the nature and extent of the injury In this case as far as The excessive Your honor no because there's no evidence submitted About the full extent of the nature and and We're hearing a motion for summary judgment and There's been no evidence suggest to suggest The full extent and nature of this injury We have one One doctor said that doesn't speak To the full nature of the injury Or whether or not it was any more Than than de minimis and I think that's The important part as far as the legal Analysis I think qualified Immunity absolutely applies to both Circumstances of false arrest and The excessive force claim And for those Reasons it has to be viewed In that light and there's nothing objectively Unreasonable or clearly excessive That another officer would say oh absolutely Violated her rights that's the test To look at it and say oh something went wrong here That's not what happened it's clear from the video And the evidence thank you your honors Thank you In regard to the Problem Mr. Clearly If you watch The tapes Officer Says She passed all my tests So I don't think she's impaired She passed all my tests He clearly says that And the last time I checked Suspicion of DWI Is not a crime That is in the books So do you have probable cause to arrest For DWI or you don't And if police officers Arrested everybody in this state We've all driven in the city of New Orleans Much less anywhere else If they arrested everybody in the state For improper lane usage We'd have a much worse problem in the city Than we do okay now because They wouldn't have time to do anything else They'd be arresting everybody for improper lane usage Excessive force Qualified immunity those things were not Addressed by the district court Those things were not addressed in the brief But Is it objectively unreasonable Was the conduct Objectively unreasonable It's to me at least It's objectively unreasonable To lie In a sworn arrest Citation that you observed In a statement that's objectively unreasonable To me Then we talked about the excessive force There was no escalation The The Turning away Using the arm That all occurred at the same time She was telling him if you read the record Don't do that my arm's hurt I've had surgery That's when she's like you said Judge Gray She's kind of like saying don't do that please It wasn't this big Resistance of a fight I'm swinging at you We're on the ground tussling or anything like that It was just a little bit of movement Like this it wasn't anything to Escalate And then finally They raised the issue of That the injury had to be From and only from This This incident There's a report in the record I'm sorry I don't have it with me today But there is a medical report in the record That has the diagnosis of what she has It's not a de minimis injury It's not a de minimis injury when the doctor says I think you're going to need an MRI And An orthopedic consultation That's beyond de minimis now But in terms of resulting From and only from and some exacerbation Of a pre-existing injury That's Wells versus Bonner Well this summary judgment Was long after the The arrest I mean did she have an MRI Did she have an orthopedic consultation That showed yes there was an injury Yes she did But I don't know I have to go back And look at the record The summary judgment record I don't have that information in front of me right now To see I don't have the record to see If I put all that in or not If it's in there it's in there If it's not it's not I did put in the medical report with the diagnosis at the time About what caused the injury But this exacerbation That was Wells versus Bonner And that's been And another case they relied upon from the middle district Was Thomas versus Gulotta Those are cases that relied upon That's a case that relied upon Wells versus Bonner But that Wells versus Bonner holding that Exacerbation of a pre-existing injury Can't give rise to an excessive force claim That was rejected by this court in Dunn versus Dank And recently in 2017 In Wyndham versus Harris County At 513 Fed Third 492 So those Are not applicable That issue is not Exacerbation of a pre-existing injury Not giving rise to excessive force Is not applicable to this case Thank you for your time Thank you counsel That will conclude the arguments For today